**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| JESSICA B.,[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil No. 3:25-cv-602 (DJN) |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant.* | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

In this action, Plaintiff Jessica B. seeks review of the Commissioner of the Social Security

Administration's ("SSA") decision to deny her Title II application for disability insurance benefits.

This matter comes before the Court for a Report and Recommendation under 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 6, 12, 14.) The motions have

been fully briefed (ECF Nos. 12, 13, 14, 15), rendering this matter ripe for review.

Plaintiff moves the Court to vacate the decision of the Commissioner denying her social

security benefits, or in the alternative, to remand Plaintiff's claim for further administrative

proceedings. (ECF No. 13, at 21.) As the basis for such relief, Plaintiff argues that the

Administrative Law Judge ("ALJ") failed to provide a proper explanation for his finding Jane

Rolander, L.C.S.W.'s and Dorothy Parker, N.P.'s opinions unpersuasive. (*See* ECF No. 13, at 12.)

Plaintiff contends that this error in assessing the supportability and consistency of the medical

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

1

evidence resulted in a residual functional capacity ("RFC") determination that was "not supported by substantial evidence." (ECF No. 13, at 12.)

To the contrary, the Commissioner argues that "the ALJ sufficiently explained why the limitations opined by Ms. Rolander and NP Parker were insufficiently supported by their own notes and examination, and not consistent with the generally unremarkable findings in the record." (ECF No. 14, at 21.) The Commissioner moves the Court to affirm the final decision denying benefits. (ECF No. 14, at 22.)

For the reasons set forth below, the Court finds the ALJ applied correct legal standards in considering both Ms. Rolander and NP Parker's opinions and that substantial evidence supports the ALJ's RFC determination. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

On July 12, 2022, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on August 17, 2021. (Administrative Record ("R.") at 70, 71.)[2] In her application, and as relevant to this appeal, Plaintiff alleged that she suffered from post-traumatic stress disorder ("PTSD"), depression, anxiety, memory loss, and attention-deficit hyperactivity disorder ("ADHD"). (R. at 71.) Plaintiff's claim was denied initially and again upon consideration. (R. at 91-94, 98-100.) Plaintiff requested a hearing before an ALJ, and one was held on August 15, 2024. (R. at 38-69, 102-05.)

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

On August 21, 2024, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act"). (R. at 20-32.) On June 4, 2025, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

3

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(f). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute

[its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION[3]

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process.  (R. at 20-32); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634-35.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 17, 2021 (the alleged onset date).  (R. at 22.)  At step two, the ALJ found that Plaintiff suffered from the severe mental impairments of anxiety, depression, and PTSD.  (R. at 23.)

At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or medically equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23.)  In finding that Plaintiff's mental impairments did not meet the criteria of the listings, the ALJ considered the four broad areas of mental functioning (commonly called "paragraph B" criteria).[4]  (R. at 24-26.)  The ALJ found Plaintiff mildly limited in the area of

---

[3] Plaintiff challenges the ALJ's consideration of opinion evidence pertaining to Plaintiff's mental impairments.  (ECF No. 13, at 12-21.)  Therefore, the Court largely restricts its discussion of the ALJ's decision to Plaintiff's mental impairments.

[4] The SSA evaluates the effects of a mental disorder on four areas of mental functioning based on a five-point rating scale.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2).  An extreme limitation

understanding, remembering, or applying information, and moderately limited in the three areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (R. at 25.) To support these findings, the ALJ acknowledged Plaintiff's reports of having difficulty with memory, following instructions, completing tasks, dealing with crowds, getting along with others, concentrating, adjusting to change, and managing her mood. (R. at 25.) At the same time, Plaintiff could perform various activities of daily living, including preparing meals, shopping, driving, attending doctor's appointments, spending time with her family, managing her finances, handling her own medical care, managing her personal care, and caring for her pet bunny. (R. at 25.) Treatment notes also described Plaintiff has having an "intact memory," "intact attention and concentration," and "appropriate grooming and hygiene." (R. at 25.)

The ALJ also considered the "paragraph C" criteria.[5] The ALJ found:

> [I]t is clear from the record that [Plaintiff] is able to manage her personal care and hygiene, take care of a pet bunny, spend time with her partner and children, play boardgames with her family, occasionally go out to eat or for coffee, participate in a virtual yoga group, prepare meals, manage her finances, go shopping at the store, attend therapy, manage her finances, and work two to three days a week as a food delivery driver.

(R. at 25-26.) While Plaintiff's mental impairments persisted for more than two years and she received treatment for those impairments in the form of outpatient therapy and medication

---

is the inability to function independently, appropriately, or effectively, and on a sustained basis in an area. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(e). A marked limitation exists when an impairment seriously limits the ability to do the same. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d). Moderate indicates a fair limitation, mild includes a slight limitation, and "no" or "none" means the claimant can function in the area independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(a)-(c).

[5] To satisfy the "paragraph C" criteria, a claimant must show a medically documented history of a mental disorder lasting for at least two years, a reliance on medical treatment, mental health therapy, psychosocial support, or a highly structured setting to diminish symptoms of the mental disorder, and only marginal adjustment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(a)-(c).

management, the ALJ found improvement of more than marginal adjustment.  (R. at 25-26.)  Thus, Plaintiff did not satisfy the "paragraph C" criteria.  (R. at 26.)

The ALJ then determined Plaintiff's RFC.  (R. at 26-31.)  Based on the record, the ALJ found that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional mental limitations:

> Background noise is limited to moderate, which is like a business office, department store, grocery store, or light traffic.  [She] is able to concentrate in the workplace for two hours before requiring a break and is limited to the performance of simple tasks. She can occasionally interact with supervisors, coworkers, and the general public. She can frequently respond appropriately to changes in a routine work setting.

(R. at 26.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective reports.  (R. at 26-27.)  Regarding her mental impairments, Plaintiff reported "difficulty remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others" due to anxious and depressed moods, irritability, panic attacks, and low motivation.  (R. at 26.)  She also stated she did not leave the house much, took frequent naps throughout the day, and experienced crying spells due to fatigue and depression.  (R. at 27.)

Despite her symptoms, Plaintiff could manage her personal care, care for a pet bunny, prepare meals, manage her finances, shop in stores, spend time with her partner and children, play boardgames, occasionally go out to eat or for coffee, and participate in a virtual yoga group.  (R. at 27.)  Plaintiff also "worked as a Door Dash delivery driver two to three times a week for four to six hours at a time."  (R. at 27.)

The ALJ then considered Plaintiff's mental health history.  (R. at 27-28.)  In May 2023, Plaintiff attended a psychiatry intake appointment and reported depression, anxiety, and a history of PTSD.  (R. at 27.)  Upon examination, Plaintiff demonstrated unremarkable motor activity,

7

perception, and thought process, as well as appropriate behavior, dress, and appearance.  (R. at 27.)  Additionally, she presented with intact memory, euthymic mood and affect, excellent insight and judgment, good attention and concentration, normal speech, and intact functional status.  (R. at 27.)   Plaintiff was prescribed Vraylar and Propranolol and continued taking Lexapro as prescribed. (R. at 27.)

In January 2024, Plaintiff attended a psychiatric intake appointment with D. Parker, N.P., and reported never starting the Vraylar or Propranolol that had been prescribed at her previous intake appointment.  (R. at 27.)  Plaintiff reported "depression and anxiety, exacerbated by crowds of people and unfamiliar environments."  (R. at 27.)  Upon examination, Plaintiff demonstrated unremarkable motor activity, perception, and thought process.  (R. at 27.)  She was oriented with appropriate dress and appearance, as well as appropriate behavior.  (R. at 27.)  Again, she presented with intact memory, euthymic mood and affect, excellent insight and judgment, good attention and concentration, normal speech, and intact functional status.  (R. at 27.)  NP Parker continued Plaintiff on Lexapro and started her on Wellbutrin.  (R. at 27.)  Additionally, NP Parker recommended individual psychotherapy, which Plaintiff began in February 2024.  (R. at 27.)

In April 2024, Plaintiff saw NP Parker for a follow-up appointment.  (R. at 28.)  She reported symptoms of "flashbacks, hypervigilance, anhedonia, avolition, poor focus, and poor self-esteem."  (R. at 28.)  Plaintiff also reported participating in weekly individual therapy sessions and going on walks.  (R. at 28.)  NP Parker continued Plaintiff on Lexapro, Wellbutrin, and Propranolol and recommended she return in two months.  (R. at 28.)

Meanwhile, Plaintiff attended individual therapy sessions with J. Rolander, L.C.S.W.  (R. at 28.)  In June 2024, Ms. Rolander noted Plaintiff as having an anxious mood and tearful affect and documented her functional status as "mildly impaired."  (R. at 28.)  Otherwise, Ms. Rolander

noted "appropriate dress and appearance, unremarkable motor activity, appropriate behavior, normal speech, good insight, excellent judgment, intact memory, good attention and concentration, unremarkable thought process, appropriate thought content, and unremarkable perception." (R. at 28.)

The ALJ then considered the opinion evidence. (R. at 28-30.) In February 2023, Plaintiff was referred for a psychology consultive examination with K. Russell, Psy.D. (R. at 28.) Upon examination, Plaintiff appeared mildly depressed and fatigued, but was pleasant and polite with normal speech, thought content, functional memory, mostly intact concentration and attention, and no disruptions with fine or gross motor coordination. (R. at 28.) Plaintiff reported needing assistance in driving and shopping but also reported being able to manage her own personal care, prepare meals, and work part-time as a food delivery driver. (R. at 28.) Dr. Russell opined that "[Plaintiff] may have difficulties maintaining regular attendance in a work setting, may need numerous rest breaks, . . . and would benefit from work responsibilities that do not involve large crowds. . . ." (R. at 28.) The ALJ found this opinion "not persuasive" because it was not supported by the examination and was not "entirely consistent with the record." (R. at 28.)

The ALJ also considered prior administrative medical findings from state agency psychological consultants. (R. at 29.) At the initial level, the consultant found Plaintiff to have moderate limitations in her abilities to interact with others, concentrate, persist, or maintain pace, and adapt or manage herself and opined that she could perform "simple tasks" with "limited changes and social interaction." (R. at 29.) At the reconsideration level, the consultant reached similar conclusions, except he found Plaintiff mildly limited in her ability to understand, remember, or apply information. (R. at 29.) The consultant on reconsideration opined that Plaintiff could "sustain attention and concentration in two-hour increments to complete an eight-

9

hour workday with infrequent interaction with the general public and may need assistance to adapt to change unless it was infrequent or implemented gradually." (R. at 29.) The ALJ found these opinions "persuasive" because "they [we]re generally supported by [the consultants'] summaries of the evidence and [we]re generally consistent with the record." (R. at 29.) Moreover, the ALJ found the record supported similar limitations and an additional limitation to moderate noise level because of Plaintiff's symptoms of depressed and anxious mood, irritability, panic attacks, and hypervigilance. (R. at 29.)

Between February 2024 and June 2024, Ms. Rolander described Plaintiff's functional status as "mildly impaired." (R. at 29.) However, in a June 2024 medical source statement, Ms. Rolander opined:

> [Plaintiff] had marked to severe limitations to her abilities to understand and remember detailed instructions; maintain attention for two hour segments; work in coordination with or in proximity to others without being distracted; complete a normal workday or workweek without interruptions; perform at a consistent pace; interact with the public; respond appropriately to changes; and deal with normal work stress….

(R. at 29.) Furthermore, Ms. Rolander determined Plaintiff would be "off-task more than 30% of the time and miss more than four days of work a month due to her mental impairments and symptoms." (R. at 29.) The ALJ found Ms. Rolander's opinions "not persuasive" because they were "not entirely supported" by her examinations of the Plaintiff and "not consistent" with the record. (R. at 29.)

The ALJ also considered a June 2024 medical source statement from NP Parker. (R. at 30.) Like Ms. Rolander, NP Parker opined Plaintiff had "marked to severe limitations" in her ability to understand, remember, and carry out detailed instructions, maintain attention for two-hour segments, and work with others without being distracted. (R. at 30.) NP Parker also found limitations in Plaintiff's ability to "complete a normal workday or workweek without interruptions;

10

perform at a consistent pace; interact with the public; respond appropriately to changes; and deal with normal work stress. . . ." (R. at 30.) Additionally, she determined Plaintiff would need to be "off-task more than 30% of the time and miss more than four days of work a month due to her mental impairments and symptoms." (R. at 30.) The ALJ found NP Parker's opinions "not persuasive" because they were "not supported by Ms. Parker's examinations of the claimant" and "not consistent with the record." (R. at 30.)

While considering the opinion evidence, the ALJ acknowledged that Plaintiff sometimes appeared mildly depressed, anxious, or tearful at appointments but concluded that the records otherwise demonstrated appropriate behavior and normal functions, including normal thought content, good insight and judgment, intact memory, and good attention and concentration. (R. at 28, 29, 30.) Moreover, Plaintiff's mental impairments were generally managed with "conservative treatment," including individual psychotherapy and medication management. (R. at 30.) Plaintiff also reported performing various activities inconsistent with the severe limitations she endorsed, including her ability to "manage her personal care and hygiene, take care of a pet bunny, spend time with her partner and children, . . . and work two to three days a week as a food delivery driver." (R. at 31.) The ALJ concluded: "[t]he record does not support the severity of limitations alleged." (R. at 31). Thus, even considering Plaintiff's depressed or anxious mood, irritability, panic attacks, and hypervigilance, the ALJ determined that the record supported Plaintiff's ability to perform simple tasks in two-hour increments with a moderate noise level, no more than occasional interaction with others, and no more than frequent changes in a routine work setting. (R. at 28, 29, 30.)

After arriving at the RFC determination, the ALJ found at step four that Plaintiff had no past relevant work. (R. at 31.) At step five, the ALJ concluded that jobs existed in significant

11

numbers in the national economy that Plaintiff could perform considering her age, education, and RFC.  (R. at 31.)  Specifically, after considering the vocational expert's testimony, the ALJ identified the following representative occupations: final inspector, assembler of electrical accessories, and garment sorter.  (R. at 31-32.)   Therefore, the ALJ found Plaintiff not disabled from August 17, 2021 (the alleged onset date) through August 21, 2024 (the date of the decision).  (R. at 32.)

## IV.    ANALYSIS

Plaintiff asserts that the ALJ did not properly analyze the medical opinions of Jane Rolander, L.C.S.W., and Dorothy Parker, N.P.  (ECF No. 13, at 14, 18.)  Specifically, Plaintiff contends that the ALJ erred in assessing the supportability and consistency of both opinions.  (ECF No. 13, at 12-21.)   As discussed below, the ALJ conducted a sufficient consistency and supportability analysis of the opinions and adequately explained why he found both opinions unpersuasive. Because the ALJ applied correct legal standards in reviewing the medical opinions and substantial evidence supports the RFC determination, the Court finds no error.

**A.    Applicable Regulations for Evaluating Administrative Findings and Medical Opinion Evidence**

Under applicable regulations,[6] the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any medical source.   20 C.F.R. § 404.1520c(a). Specifically, the ALJ must articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant;

---

[6] Claims involving medical opinion evidence filed on or after March 27, 2017, are evaluated using a revised regulatory framework.  20 C.F.R. § 404.1520c; (*see also* ECF No. 13, at 13; ECF No. 14, at 12-13.)

(4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including "familiarity with the other evidence" or "an understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c).

Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered. *Id.* § 404.1520c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* § 404.1520c(b)(2).

**B.    The ALJ Applied Correct Legal Standards in Evaluating the Opinion of Ms. Rolander, and Substantial Evidence Supports the ALJ's Findings**

On June 6, 2024, Ms. Rolander completed a Mental Medical Source Statement. (R. at 1218-22.) She noted seeing Plaintiff for weekly therapy sessions starting on February 12, 2024. (R. at 1218.) In her statement, Ms. Rolander described Plaintiff as exhibiting a high level of PTSD symptoms and severe depression, being "consistently tearful," and in a "constant state of hyperarousal and hypervigilance with sleep and appetite disturbance." (R. at 1218.) Ms. Rolander noted that Plaintiff's symptoms made it difficult for her to complete activities of daily living and "severely impaired" her functional status. (R. at 1218.) Ms. Rolander listed Plaintiff's symptoms to include anhedonia, decreased energy, difficulty thinking or concentrating, persistent disturbances of mood or affect, psychomotor agitation or retardation, and memory impairment,

13

among others.  (R. at 1219.)  She then opined that Plaintiff had marked to severe limitations in her ability to understand and remember detailed instructions, maintain attention for two-hour segments, complete a normal workday or workweek without interruptions, perform at a consistent pace, interact with the public, work with others without being distracted, respond appropriately to changes, and deal with normal work stress, among others.  (R. at 1220-21; *see also* R. at 29.)  Ms. Rolander also found that Plaintiff would be off task more than 30 percent of the time and would miss more than four days of work per month due to her mental impairments.  (R. at 1221-22.)

After summarizing Ms. Rolander's findings (R. at 29 (citing Ex. 17F/3-7 [R. at 1218-22])), the ALJ found her opinion unpersuasive because it was "not entirely supported by Ms. Rolander's examinations of [Plaintiff]" and "not consistent with the record."  (R. at 29.)  The ALJ explained that while Plaintiff "sometimes appeared mildly depressed or anxious with tearful and constricted affect" at appointments, she was otherwise described as:

> generally oriented, pleasant, polite, and cooperative with appropriate dress and hygiene, good eye contact, normal speech, normal thought content, unremarkable motor activity, appropriate behavior, euthymic mood and affect, good insight and judgment, intact memory, good attention and concentration, unremarkable thought process, appropriate thought content, unremarkable perception, and no disruptions with fine or gross motor coordination.

(R. at 30 (citing Exs. 8F/2-3 [R. at 845-46]; 15F/13 [R. at 1153]; 16F/2, 40, 54 [R. at 1162, 1200, 1214]).)  Therefore, the ALJ found that the record supported limiting Plaintiff to "perform[ing] simple tasks in two hour increments with a moderate noise level, no more than occasional interaction with others, and the ability to frequently respond appropriately to changes in routine work setting" considering her symptoms, "including depressed mood, anxious mood, irritability, panic attacks, and hypervigilance."  (R. at 29-30.)  In doing so, the ALJ properly discussed the two most important factors of consistency and supportability in accordance with applicable legal standards and explained why he found Ms. Rolander's opinion unpersuasive.

In arguing otherwise, Plaintiff contends the ALJ only addressed supportability "in passing by making a brief comparison to Plaintiff's examination," while "entirely ignor[ing] the supporting explanations" and portions of the treatment notes that support Ms. Rolander's opinion. (ECF No. 13, at 14-15.) This argument fails for several reasons.

First, the ALJ adequately explained why he found Ms. Rolander's opinion "not entirely supported" by her own examinations of Plaintiff. (R. at 29-30.) Specifically, the ALJ could not reconcile Ms. Rolander's progress notes from between February and June 2024, which described Plaintiff's functional status as "mildly impaired," with her June 2024 medical source statement, which found "marked to severe limitations." (R. at 29 (citing Exs. 16F [R. at 1177, 1187, 1194, 1198, 1205-15]; 17F/3-7 [R. at 1218-22]).) The ALJ also highlighted Ms. Rolander's findings that Plaintiff appeared with "appropriate dress and appearance, unremarkable motor activity, appropriate behavior, normal speech, good insight, excellent judgment, intact memory, good attention and concentration, unremarkable thought process, appropriate thought content, and unremarkable perception" throughout her therapy sessions, even when exhibiting an anxious or depressed mood and tearful affect. (R. at 28 (citing Ex. 16F/54 [R. at 1214]).) Even if brief, the ALJ built an "accurate and logical bridge" from the evidence to his conclusions, thus allowing the Court to engage in meaningful review. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).[7]

---

[7] This distinguishes the ALJ's decision here from those in the cases cited by Plaintiff. (ECF No. 13, at 16 (citing *Cleo G. v. Comm'r of Soc. Sec.*, No. 24-cv-2834, 2025 WL 2771919 (D. Md. Sept. 29, 2025); *Cody v. Comm'r of Soc. Sec. Admin.*, No. 9:20-cv-2620, 2021 WL 6012228 (D.S.C. Oct. 27, 2021), *report and recommendation adopted sub nom.*, *Belinda C. v. Comm'r of Soc. Sec.*, 2021 WL 6011067 (D.S.C. Dec. 17, 2021)).) In both *Cleo G.* and *Cody*, the courts remanded for further administrative proceedings because the ALJs failed to properly explain the supportability factor, leaving the courts to engage in guesswork as to how the factor was considered. *See Cleo G.*, 2025 WL 2771919, at *4-6; *Cody*, 2021 WL 6012228, at *9-10. In contrast to those cases, and as already discussed above, the ALJ here explained why he found Ms. Rolander's opinion not

15

Second, while Plaintiff faults the ALJ for not addressing each of Ms. Rolander's supporting explanations or progress notes (ECF No. 13, at 15-16), the ALJ's decision acknowledges and cites Plaintiff's therapy sessions with Ms. Rolander and Ms. Rolander's medical source statement. (*See, e.g.*, R. at 28 ("Meanwhile, [Plaintiff] continued individual psychotherapy sessions with J. Rolander, L.C.S.W." (citing Ex. 16F [R. at 1173-81, 1187-88, 1194-99, 1205-15])); R. at 29 ("Between February 2024 and June 2024, Ms. Rolander noted that [Plaintiff]'s functional status was 'mildly impaired.'" (citing Ex. 16F [R. at 1173, 1177, 1187, 1194, 1196, 1198, 1205, 1207, 1209, 1214])); R. at 29 ("The record also includes a June 2024 medical source statement from Ms. Rolander." (citing Ex. 17F/3-7 [R. at 1218-22]))).) The ALJ also pulls out specific findings from Ms. Rolander's progress notes regarding Plaintiff's mental status throughout the decision. (*See* R. at 28, 29, 30, 31.) While Plaintiff identifies portions of the record the ALJ did not explicitly address (ECF No. 13, at 15-16), there is no requirement that the ALJ specifically refer to *every* piece of evidence in his decision. *See Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (citing *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)). Moreover, just because the ALJ did not refer to certain parts of a treatment record does not mean he failed to consider it. *See Reid*, 769 F.3d at 865.

Finally, to the extent Plaintiff identifies portions of Ms. Rolander's medical source statement or progress notes which she contends supports Ms. Rolander's opinion (ECF No. 13, at 15-16), such conflicting evidence does not warrant remand. As discussed above, the ALJ adequately explained why he found Ms. Rolander's opinion not entirely supported and cited substantial record evidence supporting that finding. (*See* R. at 29, 30, 31.) This Court must not

---

entirely supported by her own examinations of Plaintiff and cited record evidence to support his conclusion. (R. at 29-30.)

16

"reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (second alteration in original)).

Regarding the consistency factor, Plaintiff contends that the ALJ only "made a general comparison to examinations at [H]ealing Circle," where Ms. Rolander practiced, and "never addressed the consistency of evidence from elsewhere in the record." (ECF No. 13, at 16, 17.) The ALJ's decision shows otherwise.

In finding Ms. Rolander's opinion "not consistent with the record," the ALJ referenced appointments with different providers and examiners where Plaintiff sometimes presented with mild depression and anxiety but was "generally oriented, pleasant, polite, and cooperative with appropriate dress and hygiene, good eye contact, normal speech, normal thought content … appropriate behavior, euthymic mood and affect, good insight and judgment, intact memory, [and] good attention and concentration," among others. (R. at 29-30 (citing Ex. 8F/2-3 [R. at 845-46] (examination results from an evaluation with Karen Russell, Psy.D.); Ex. 15F/13 [R. at 1153] (examination results from an appointment with Ryan Ernest, PMHNP); Ex. 16F/2, 40 [R at 1162, 1200] (examination results from an appointment with NP Parker, also from Healing Circle)).) The ALJ concluded that Plaintiff's "mental impairments were generally managed with conservative treatment including outpatient medication management and individual psychotherapy," which did not support the severity of limitations alleged. (R. at 30, 31.) This shows that the ALJ considered the entire medical record when conducting the consistency analysis, not just Ms. Rolander's notes from Healing Circle.

Additionally, the ALJ considered prior administrative medical findings from two state psychology consultants, who found that Plaintiff had mild to moderate limitations and could

17

perform "simple, routine tasks with limited changes and social interaction" and assistance in adapting to changes. (R. at 29.) Unlike Ms. Rolander's opinion, the ALJ found these opinions persuasive, in part because they were consistent with the record. (R. at 29.) The ALJ found that the record supported similar limitations, with an additional limitation to moderate noise level, given Plaintiff's symptoms of depressed or anxious mood, irritability, panic attacks, and hypervigilance. (R. at 29.) These prior administrative medical findings provide further support for the ALJ's finding that Ms. Rolander's opinion was inconsistent with the record.

The ALJ also considered Plaintiff's hearing testimony regarding her activities. (R. at 31.) Plaintiff testified that she could:

> manage her personal care and hygiene, take care of a pet bunny, spend time with her partner and children, play boardgames with her family, occasionally go out to eat or for coffee, participate in a virtual yoga group, prepare meals, manage her finances, . . . and work two to three days a week as a food delivery driver.

(R. at 31 (citing Hearing Testimony [R. at 43-61]).) The ALJ found Plaintiff's ability to participate in these types of activities inconsistent with the severity of restrictions alleged. (*See* R. at 31.) Thus, contrary to Plaintiff's argument, the ALJ considered the record evidence as a whole when assessing the consistency factor and provided sufficient explanations for his conclusion that Ms. Rolander's opinion was not consistent with the record.[8]

---

[8] Again, this distinguishes the ALJ's decision here from those in the cases cited by Plaintiff. (ECF No. 13, at 14, 17 (citing *Kristin H. v. Comm'r of Soc. Sec. Admin.*, No. 9:24-cv-3172, 2025 WL 2086108 (D.S.C. July 8, 2025), *report and recommendation adopted*, 2025 WL 2085840 (D.S.C. July 23, 2025); *Singleton v. Kijakazi*, No. 9:21-cv-3922, 2023 WL 1784656 (D.S.C. Jan. 10, 2023), *report and recommendation adopted*, 2023 WL 386824 (D.S.C. Jan. 25, 2023)).) In those decisions, the ALJs did not adequately address the consistency factor in evaluating opinion evidence. *Kristin H.*, 2025 WL 2086108, at *7-8, 10; *Singleton*, 2023 WL 178456, at *7-9, 11. As discussed above, the ALJ here discussed specific record evidence he found inconsistent with the severe limitations opined by Ms. Rolander.

In sum, the ALJ properly considered both the supportability and consistency factors when deeming Ms. Rolander's opinion unpersuasive.  He provided an accurate and logical bridge from the record evidence to his conclusions regarding the same.  Because the ALJ applied correct legal standards and substantial evidence supports the ALJ's conclusions, the Court finds no error.

C.    **The ALJ Applied Correct Legal Standards in Evaluating the Opinion of NP Parker, and Substantial Evidence Supports the ALJ's Findings**

On June 10, 2024, NP Parker completed a Mental Medical Source Statement.  (R. at 1223-27.)  She saw Plaintiff monthly since January 2024 for medication management appointments, noting a partial response.  (R. at 1223.)  NP Parker described Plaintiff as having low energy, fatigue, frequent crying spells, low frustration tolerance, hypervigilance, and memory impairment. (R. at 1223.)  She noted Plaintiff's symptoms to include difficulty thinking or concentrating, psychomotor agitation or retardation, and memory impairment, among others.  (R. at 1224.)  NP Parker opined that Plaintiff had marked to severe limitations in her ability to understand, remember, and carry out detailed instructions, maintain attention for two-hours, work with others without being distracted, complete normal workdays and workweeks without interruptions, perform at a consistent pace, interact with the public, respond appropriately to changes, and deal with work stress, among others.  (R. at 1225-26; *see also* R. at 30.)  Additionally, NP Parker determined Plaintiff would be off task more than 30 percent of the time and would miss more than four days of work a month due to her mental impairments.  (R. at 1226-27.)

After summarizing NP Parker's opinion (R. at 30 (citing Ex. 17F/8-12 [R. at 1223-27])), the ALJ found it unpersuasive.  (R. at 30.)  In doing so, the ALJ again discussed the two most important factors of consistency and supportability as required by applicable legal standards and explained why he found NP Parker's opinion unpersuasive.

Regarding the supportability factor, the ALJ found Ms. Parker's opinion "not supported by [her] examinations of [Plaintiff]." (R. at 30.) The ALJ had previously discussed NP Parker's progress notes, including records from January and April 2024. (R. at 27-28.) In January 2024, NP Parker found Plaintiff was "oriented with appropriate dress and appearance, unremarkable motor activity, appropriate behavior, normal speech, euthymic mood and affect, excellent insight and judgment, intact memory, good attention and concentration, unremarkable thought process, appropriate thought content, unremarkable perception, and intact functional status." (R. at 27 (citing Ex. 16F/2 [R. at 1162]).) In April 2024, Plaintiff once again had positive examination results, such as intact memory, appropriate behavior, good attention and concentration, and intact functional status. (R. at 28 (citing Ex. 16F/40 [R. at 1200]).) Additionally, Plaintiff reported she had been participating in therapy sessions and reported improvement in her mood and energy. (R. at 28, 1203.) The ALJ concluded that these examinations did not support NP Parker's marked to severe limitations and instead supported Plaintiff's ability to "perform simple tasks in two hour increments with a moderate noise level, no more than occasional interaction with others, and the ability to frequently respond appropriately to changes in a routine work setting due to symptoms including depressed mood, anxious mood, irritability, panic attacks, and hypervigilance." (R. at 30.) This constitutes an adequate supportability assessment.[9]

---

[9] In arguing otherwise, Plaintiff raises the same contention she asserted in connection with Ms. Rolander's opinion. She contends that the ALJ did not discuss all of NP Parker's supporting explanations and "failed to address most of NP Parker's treatment notes." (ECF No. 13, at 18-19.) This argument fails for the same reasons discussed above. First, the ALJ adequately explained why he found NP Parker's opinion not supported by her own examinations of Plaintiff with reference to specific record evidence. (*See* R. at 27, 28, 30.) Second, the ALJ need not refer to every piece of evidence in his decision, and omitting such reference does not mean he failed to consider it. *See Thomas*, 916 F.3d at 312; *Reid*, 769 F.3d at 865. Finally, while Plaintiff again identifies portions of NP Parker's notes that support her opinion (ECF No. 13, at 18-19), such conflicting evidence does not warrant remand. *See Hancock*, 667 F.3d at 472.

As for the consistency factor, the ALJ found NP Parker's opinion inconsistent with the record. (R. at 30.) Plaintiff managed her mental impairments with conservative treatment, including "outpatient medication management and individual psychotherapy." (R. at 30.) At appointments, she generally appeared:

> oriented, pleasant, polite, and cooperative with appropriate dress and hygiene, good eye contact, normal speech, normal thought content, unremarkable motor activity, appropriate behavior, euthymic mood and affect, good insight and judgment, intact memory, good attention and concentration, unremarkable thought process, appropriate thought content, unremarkable perception, and no disruptions with fine or gross motor coordination.

(R. at 30-31 (citing Exs. 8F/2-3 [R. at 845-46]; 15F/13 [R. at 1153]; 16F/2, 40, and 54 [R. at 1162, 1200, 1214]).) Plaintiff also could perform multiple activities, including managing her personal care, caring for a pet, spending time with her partner and children, playing boardgames, going out in public for dining or shopping, participating in a virtual yoga group, managing her finances, and working two to three days a week as a food delivery driver. (R. at 31.) Thus, while Plaintiff sometimes appeared at appointments with "tearful and constricted affect" and had symptoms, including "depressed mood, anxious mood, irritability, panic attacks, and hypervigilance," the ALJ found the record supported her ability to perform "simple tasks in two hour increments with a moderate noise level, no more than occasional interaction with others, and the ability to frequently respond appropriately to changes in a routine work setting." (R. at 30.) Therefore, he found the record evidence inconsistent with NP Parker's more extreme limitations. (R. at 30.)

Plaintiff asserts the ALJ only discussed the evidence referencing NP Parker's examinations of Plaintiff generally and that the rest of her treatment notes were consistent with the limitations. (ECF No. 13, at 19.) However, "even if the allegedly contradictory evidence Plaintiff highlights could support a different result, the [C]ourt's role is not to second-guess the ALJ's findings."

*Jaworski R. v. Kijakazi*, No. 3:20-cv-797, 2022 WL 203749, at *6 (E.D. Va. Jan. 6, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 200364 (E.D. Va. Jan. 21, 2022).

Additionally, Plaintiff contends that the ALJ failed to consider the consistency of Ms. Rolander's opinions and NP Parker's opinions with each other when evaluating this factor. (ECF No. 13, at 20.) To the contrary, the ALJ acknowledged that both opinions assigned "marked to severe limitations" for Plaintiff's abilities:

> to understand, remember, and carry out detailed instructions; maintain attention for two hours segments; work in coordination with or in proximity to others without being distracted; complete a normal workday or workweek without interruptions; perform at a consistent pace; interact with the public; respond appropriately to changes; and deal with normal work stress.

(R. at 29, 30.) Both opined that Plaintiff "would need to be off-task more than 30% of the time and miss more than four days of work a month due to her mental impairments and symptoms." (R. at 29, 30.) Regardless, while Ms. Rolander's and NP Parker's opinions mirrored each other, the ALJ determined they were not consistent with other evidence in the record. (R. at 29, 30.) In doing so, the ALJ adequately explained his findings and cited substantial evidence supporting his conclusion. Thus, the ALJ properly evaluated NP Parker's opinion, and the Court finds no error.

## V.    CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge David J. Novak and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/ 

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: July 13, 2026